WALTER MITCHELL and WM. W. TURNER, appellees, *vs.* SAF-
FORD STEVENS, appellant.

Whether parcel or not, of the premises conveyed by deed, is a question of fact, to be determined by the jury, and may depend on facts, dehors the instrument; and the finding of the jury is conclusive, so that the Court will not, for that cause, disturb the verdict, upon a case stated.

Trustees, under a will giving express powers to the survivors to appoint substitutes, in case of death, or non-acceptance of the trust, may convey the legal estate whereof they are trustees, with the consent of the *cestui que trust*, to third persons, so as to enable such third persons to maintain ejectment in their own names.

The conveyance, by trustees, to third persons, is, of itself, sufficient evidence of their having accepted the trust, to support their title in the hands of their grantees.

The conveyance of a trust estate, to the uses for which it was originally created, while there is an adverse possession, is not within the statute of frauds; and is valid, notwithstanding such adverse possession.

THIS was an action of ejectment, to recover the seizin and peaceable possession of a certain piece of land, called No. 185, laid to the original right of Zebulon Frost, in the town of Burlington.

To prove a right of possession, the plaintiff offered a deed from Samuel Lane to Joshua Staunton, dated June 22, 1792, and recorded the 29th October, 1792, the description in which is this : " all my right, title, interest, property, and demand, " of, in, and unto two hundred acres of land, situate, and " lying and being in Burlington aforesaid, bounded as follows : " beginning at a hemlock tree, spotted, standing on the south- " ern bank of Onion river, which is the upper river corner of se- " ven hundred acre farm, or tract of land which Samuel Lane " originally purchased of Ira Allen ; thence south 30 degrees " west, 254 rods, to a stake and stones ; thence north 60 degrees " west, 160 rods to a stake ; thence north 30 degrees east, to a " bass-wood tree, marked D. S. standing on the southern bank " of Onion river ; thence along the river, up stream, to the first " mentioned bound, containing 206 acres, the said six acres is " reserved for highways ;" a deed from the said Joshua Staunton to Sally Peaslee, the daughter of said Joshua, dated January 14, 1804, and recorded in Burlington, February 1, 1804, and in Williston, on the 9th of February, 1804, of " the whole of that " farm, lying and being in the towns of Burlington and Willis- " ton, in the county of Chittenden, aforesaid, containing one " hundred and forty acres, be the same more or less, and is the " same farm which I purchased of Samuel Lane, Esq. on which " David Staunton formerly lived ;" also the will of Sally Peaslee, the parts of which, material in the present case, are as follow, viz. " I give, devise, and bequeath all my real and personal es- " tate, property, and effects of every kind and description what- " soever, wheresoever the same may be, whereof I have power " to dispose, whether in possession, remainder, reversion or ex- " pectancy, unto my friends, Stephen Mix Mitchell, Solomon " Miller, and Charles Mitchell, to hold the same unto the use " of them the said Stephen, Solomon, and Charles, their heirs, " executors, administrators and assigns, forever, upon the trusts,

*Chittenden,*
December,
1825.

*Mitchell and*
*Turner*
*vs.*
*Stevens.*

" nevertheless, and to, and for the uses, &c. hereinafter limited, " &c. that is to say, that the said Stephen, Solomon and Charles, " shall hold the same, or any or every part thereof, or shall " sell and dispose thereof, as they or any two of them, or the " survivors or survivor of them shall deem most expedient, for " the benefit or advantage of my children, according to the pro- " visions of, and in the manner hereinafter specified in my will." —Then follow the dispositions of the property among her three children, and the conditions on which they shall hold the same; and, among other things, she gives to her daughter Lucinda Maria Peaslee, " the exclusive benefit and advantage of my " farm of land, lying partly in the town of Burlington, and partly " in the town of Williston, and containing about two hundred " acres; which said farm, or a part thereof, formerly belonged " to my father Joshua Staunton, and was occupied, or some part " thereof was heretofore possessed, by David Staunton." "And " my will is, that if either of the trustees herein before named " refuse or decline to accept the trust, or shall die or become " incapacitated, before the trusts are executed or performed, " that then the other trustees or trustee may nominate and ap- " point another or other trustee or trustees in his or their place " and stead, who shall have like powers, and all the rights, es- " tate and interests of the said trustees or trustee, so refusing, " declining, dying, or becoming incapacitated; provided, that if " such nomination or appointment becomes necessary, after ei- " ther of my children shall attain the age of fourteen years, " then the said appointment and nomination shall be made with " the consent or approbation of my said child or children."— Also, an indenture or conveyance from Charles Mitchell to the plaintiffs, of which the following extracts contain all that is material in the present case : " This Indenture, made this 9th " day of October, 1822, between Charles Mitchell of the first " part, and Walter Mitchell and William W. Turner of the se- " cond part, witnesseth, that whereas the said Charles Mitchell " was, by the last will and testament of Mrs. Sarah H. Peaslee, " widow of Zaccheus Peaslee, constituted and appointed one of " the trustees of her estate, for the uses and purposes in the said " will particularly specified, and Stephen Mix Mitchell, one " other of the trustees, and acting executor, under the said will, " hath since died intestate; and whereas Maria Peaslee, one of " the children, and only daughter of the said Sarah H. Peaslee, " hath desired the said Charles Mitchell, because, &c. to relin- " quish the trust aforesaid, and to convey and transfer the same, " and the estate so held for her use and benefit, unto the parties " of the second part, so as to enable them to dispose of the said " estate, as he the said Charles might or could at any time have " done; and whereas the said Charles is convinced, that the ob- " jects of the said trust can be better effected by the appoint- " ment and nomination of the said parties of the second part, " as trustees, in the place and stead of the said Stephen Mix " Mitchell, deceased, and of the said Charles Mitchell, and by

3

*Chittenden,*
December,
1825.

Mitchell and
Turner
*vs.*
Stevens.

" the conveyance and transfer thereof to the said Walter Mit-
" chell and William W. Turner, for the purposes aforesaid ; now,
" therefore, this Indenture witnesseth, that the said Charles
" Mitchell, in consideration of the premises, &c. and of five
" dollars, &c. hath given, granted, bargained, sold, assigned,
" quit-claimed and set over, and by these presents doth give,
" grant, bargain, sell, assign, quit-claim, and set over unto the
" said Walter Mitchell and William W. Turner, all and singular
" his right, title, interest, claim, and demand whatsoever, of, in
" and to all and every part of the estate and property so as afore-
" said devised by the *last will and testament of* Mrs. Sarah H.
" Peaslee, for the use and benefit of her daughter, Maria Peas-
" lee, wheresoever the same may be situated, which estate and
" property, hereby intended to be transferred, is more particu-
" larly described and specified in the said last will and testament,
" to which reference is to be had for the description thereof, as
" if the same were herein particularly recited.   To have, &c.
" in trust and for the uses and purposes set forth and specified
" in the said will, and for no other use or interest whatever.
" And the said Charles, under the power contained in said will,
" doth nominate, constitute and appoint the said Walter Mitch-
" ell, as a trustee under the said will, in the place and stead
" of Stephen Mix Mitchell, deceased, which nomination is to be
" concurred in by Solomon Miller, &c.   And the said Charles
" doth for himself nominate and appoint the said William W.
" Turner as a trustee under the said will, in the place and stead
" of the said Charles, and the said Charles doth hereby re-
" nounce and relinquish the trust aforesaid, in regard to the said
" estate so devised to the said Maria Peaslee, in favor of the
" said two above named appointees."

Also, a like conveyance from Solomon Miller to the plain-
tiffs, being, in substance, a transcript from the foregoing.

The plaintiff also introduced parol evidence, tending to show
that David Staunton and others, under the said Joshua, had enter-
ed upon a piece of land upon Onion river, within the bounds of
the deed from Samuel Lane to said Joshua Staunton, and had con-
tinued said possession until the entry of the defendant; but did not
attempt to show any title derived from the original proprietor.

The defendant claimed to hold by virtue of a title from the
original grantee: and, for the purpose of making out his title,
read a copy of a deed from Zebulon Frost, the original grantee,
to Edward Burling, conveying his right in said town ; also, cop-
ies of deeds, conveying the same right from Edward Burling to
Samuel Burling, from Samuel Burling to Samuel Stone, from
Samuel Stone to Thaddeus Tuttle and Stephen Pearl ; and from
Abraham Jones, sheriff and collector, to Thaddeus Tuttle ; and
an original deed from the said Thaddeus Tuttle and Stephen
Pearl, to the defendant.   The defendant introduced the record
of the Proprietors of Burlington ; from which it appeared, that
the lands in said town had been divided into severalty, before

the date of the deed from Joshua Staunton to Sally Peaslee ; that the tract of land contained in the deed from Samuel Lane to Joshua Staunton had been divided : one hundred and forty acres of which, marked on the place as No. 7, being set to the right of —— ——, and the remaining sixty acres, being the land in question, was designated on the plan as No. 185, and set to the right of the said Zebulon Frost.

To the reading of the deed from Joshua Staunton to Sally Peaslee, the defendant objected ; because it did not convey the land in dispute ; but the court permitted it to be read ; to which the defendant excepted.

The defendant also objected to the reading of the deeds, or indentures from Solomon Miller and from Charles Mitchell, for two reasons : first, because, by the terms of Mrs. Peaslee's will, the trustees, having accepted, could not appoint other trustees in their own room ; and, that the said appointment was not in conformity to the authority vested in said trustees. Secondly, because, at the time of the execution of said conveyances from said Solomon Miller and Charles Mitchell to the plaintiffs, and long before, the defendant was, and had been, in the actual possession of said land, claiming to hold the same adverse to the claim of the plaintiffs, and of those under whom they claim, and that said conveyance was therefore void ; but the Court permitted them to be read. To which decision of the Court the defendant excepted.

It is also agreed that it was proved on trial, that the defendant had been in possession of the premises about six years ; had built a house, and cleared about twenty acres ; claiming the same, adverse to the claim of the plaintiffs, and of those under whom they claim.

The above case agreed to by

*William A. Griswold,* attorney for the plaintiffs.——

*Charles Adams,* attorney for the defendant.——

*Adams,* for the defendant, in support of the exceptions.

The defendant contends, That by the deed from Joshua Staunton to Sarah H. Peaslee, nothing passed except the 140 acres, which is now known as No. 7.

It is true, that in this deed, the land is said to be the farm where David Staunton formerly lived, and that the deed from Lane to J. Staunton, conveys 206 acres, being the said lot No. 7, and the land in question. But, it is to be observed, that the deed from Lane to Staunton was before any survey or plan of the town. When the town was surveyed, this tract was divided, and No. 7. was set to the right under which Staunton claimed, and the remainder, No. 185, to another right. There is no pretence that David Staunton ever lived on that part of the tract afterwards known as 185, or had any possession thereon. The expression, therefore, in J. Staunton's deed to Mrs. Peaslee, " *the farm on which David Staunton lived,*" instead

*Chittenden,*
*December,*
1825.

*Mitchell and*
*Turner*
*vs.*
*Stevens.*

of conveying 185, must be understood as limiting the conveyance to No. 7. This is to be inferred, from the fact that he gives the number of acres in that lot; and it is not to be presumed, after the town was divided, that he claimed to have any right to 185.

It may be inferred from the circumstances, that Staunton acquiesced in the division of the town. As he never had any possession upon 185, any possession upon that tract, now No. 7, could not be construed to extend to No. 185. After the division, when 185 was set to another proprietor, any possession of Staunton, on the other part, must be considered as ceasing, and from the division, he must be considered as having abandoned any constructive possession of 185, to the true owner of the land.

2. The trustees under Mrs. Peaslee's will had no power to appoint other trustees in their own stead. The will provides, that if any of the trustees shall refuse to accept, die, or become incapacitated, the remaining trustees may appoint in the room of the trustee declining, dying, &c. If the trustees had all declined accepting the trust, nothing could have been done under the will by them; they could make no appointment of other trustees. But the trustees did accept, and they had a right after the death of S. M. Mitchell, to appoint one in his room, and here their power ceased. The appointment of W. Mitchell may be in conformity to the will; but the appointment of Turner is void, and the authority of the other two trustees, S. Miller and C. Mitchell, still continues. It may also be observed, that the appointment of these new trustees is partial; they are only made trustees so far as concerns the interest of Maria Peaslee, and for all other purposes have reserved their own authority.

3. The conveyance from S. Miller and C. Mitchell to the plaintiffs is void by the statute, by the adverse possession of the defendant.

Stat. 171.

The indenture between these parties cannot be considered in any other light, than a conveyance of Maria Peaslee's share. This is the language of the instrument, and it can have no other construction. The legal interest of Mrs. Peaslee was vested in the first trustees by her will, and every conveyance or transfer of that interest, must be subject to the laws of the land.

*Griswold,* in reply. The first exception taken by the defendant is, that Charles Mitchell and Solomon Miller, originally named trustees by Mrs. Peaslee's will, having accepted the trust, had no power, by the will, to transfer their interest in the trust estate, and make an appointment of other trustees.

It does not appear from evidence, that the aforesaid trustees ever accepted the trust, or did any act under the will, except the transfer of their interest in the estate of Maria Peaslee, one of the legatees, and the appointment of Walter Mitchell in the place of Stephen M. Mitchell, deceased, and of William W. Turner in the place of the said Solomon Miller and the said Charles Mitchell. S. M. Mitchell, being sole executor of the will, and guardian to the legatee above mentioned, had the whole charge of the estate

*Chittenden,*
December,
1825.

Mitchell and
Turner
*vs.*
Stevens.

until his death, and there was no occasion for the other trustees named in the will to accept or refuse, or take any part in executing the trusts. After the death of S. M. Mitchell, the other trustees being applied to, declined executing the trust committed to them, and at the request of the legatee above mentioned, transferred their interest, and made an appointment of other trustees as aforesaid.

The will expressly authorises the trustees named in the will, in case either should refuse, or decline, or die, before the trusts are executed, the other trustee or trustees may appoint another or other trustee or trustees in his or their stead ; and who shall have all the power of the trustee or trustees so refusing, declining, &c. It is a settled rule of law, that wills shall be construed liberally and beneficially, and so as to carry the real intention of the testator into effect.

In the present case, it appears that S. M. Mitchell, one of the trustees named in the will, had deceased, and that the other two surviving trustees, being unwilling to execute the trusts, exercised no other power than to supply the vacancy occasioned by the death of S. M. Mitchell, and to substitute other trustees in their own stead, and in the same instrument declining and surrendering the trust. It is contended that this power was vested in the surviving trustees, and necessarily exercised, for the purpose of carrying into effect the real intention of the testator.

Second exception. That admitting the surviving trustees had power to transfer their interest, and make a new appointment of trustees, still the deed or instrument by which the transfer is made, is void under the statute " To prevent fraudulent speculations, and the sale of choses in action ;" the defendant being in possession adverse to the plaintiffs.

It is here admitted, that the legal estate vested in the trustees, and the equitable estate in the *cestui que trust.* The legal estate must always vest somewhere : it vests also in executors and administrators, and sales made by them, under the order of Court, acting as they do in the right of others, are not within the reason or letter of the law.—*Swift's Digest,* 121.

The design of the common law on this subject, is the same ; to prevent maintenance and litigation, and the sale of disputed titles. Instead of a will, suppose it had been a deed in trust, conditioned to convey to the heir, and minor, on arriving at full age, at which time the trust was ended. In the mean time a person attains possession, holding the same adverse. Would a conveyance to the *cestui que trust* be void under the statute ?

There are clauses in this will which authorise the trustees, in their discretion, to deed to legatees, on arriving at full age ; but they have not exercised it. They have transferred the estate, and continued the trust in other hands, for the same uses which were originally designed by the testator, and it vests for the same legal and equitable purposes in the *cestui que trust,* as it did before the transfer. Here is no sale of a disputed title ; no fraudulent speculation. The conveyance cannot come within

the spirit and design of the law: nor do any of the mischiefs arise intended to be remedied by it.

Third exception. That the deed from Joshua Staunton to Sally Peaslee does not convey the land in dispute.

This deed conveys all Joshua Staunton's farm in Burlington and Williston, which he purchased of Samuel Lane, containing 140 acres, more or less, and being the same farm on which David Staunton formerly lived. By recurring to the deed of Samuel Lane to Joshua Staunton, it appears that he conveyed, by a warrantee deed, 206 acres, by metes and bounds, and the same was recorded in June, 1792; which bounds covered the 60 acres in dispute. It appears that the town of Burlington was divided in 1798, and the 60 acres set to the right of Zebulon Frost, being 6 years after Lane's deed to Staunton. D. Staunton deeded to his daughter, Sally Peaslee, in January, 1804, being short of 14 years from the time he received the deed from Lane.—— His possessory title at that time was not complete, and was probably the reason why he conveyed 140 acres, more or less, and being all he purchased of said Lane. Mrs. Peaslee and her executor continued in possession, under her deed, until she was disseized by the defendant, about 8 or 9 years since, making a continued possession of 24 years, from 1792 to 1816.

Hutchinson, J. delivered the opinion of the Court.

Upon the trial of this cause a verdict was taken for the plaintiffs, subject to the opinion of this court, upon a case to be stated. The case is agreed upon by the parties, and now before the Court. Upon this case, three questions are raised, and now to be decided: 1st. Whether the decision of the Court was right in admitting the deed of Joshua Staunton to his daughter Sarah Peaslee, which was offered by the plaintiffs, to be read to the jury? The objection is, not that there is any defect in the deed, any want of formality in its execution; but that it does not comprise the land in dispute. The description is, "The whole of that farm, &c. containing one hundred and forty acres, be the same more or less, and is the same farm which I purchased of Samuel Lane, Esq. on which David Staunton formerly lived." It appears that the whole farm above mentioned did once contain 206 acres, and did comprise the land now in dispute; but that, at a later period, and before the date of said deed from said Joshua to said Sarah, the proprietors, in making their division of the land in town, surveyed off the piece in dispute, and set it to the right of one Frost, leaving 140 acres. Now it is contended, that Staunton must have intended to convey what was left, after the taking off the piece set to Frost. And a very forcible argument is raised to this effect; but the Court consider it properly addressed to the jury, and not to the Court. The deed was properly admitted; for possibly, and very probably, it may comprise the land in question. And whether it does or not, must depend upon proof dehors the deed. What land was conveyed by Lane to J. Staunton; on what farm David

Chittenden,
December,
1825.

Mitchell and
Turner
vs.
Stevens.

Staunton once lived, and the extent of it; and what the extent of that visible occupancy which would create a possessory title, are all points to be decided by the jury. And the facts stated in the case, that the whole farm contained 206 acres; that taking off the piece in question for Frost, leaves 140 acres; that Staunton's deed to his daughter mentions the latter quantity only; that David Staunton's actual improvements were all on the 140 acres, and not on the piece in question; furnished strong grounds for the jury to find, that the deed from J. Staunton to his daughter Sarah Peaslee was not intended to comprise the land in question. But the opposing proof, that the whole farm conveyed by Lane to J. Staunton, being 206 acres, was the farm on which David Staunton lived, must have taken effect with the jury; and their verdict has settled the question.

The second question raised upon the case is, whether the title to the premises has so passed to the plaintiffs, under the will of Sarah Peaslee, that the plaintiffs can support an action of ejectment upon that title?

Sarah Peaslee, in her will, gives the exclusive use and benefit of the land in question to her daughter Maria; but appoints three trustees, Stephen M. Mitchell, Solomon Miller and Charles Mitchell, and devises and bequeaths to them all her estate, in trust, to give effect to the other provisions of her will. This would give these original trustees, or such of them as accepted the trust, a good right to recover this land for the benefit of Maria. None of these original trustees are plaintiffs; but the plaintiffs claim to derive title from them, the validity of which is now disputed by the defendants; for they contend, that those trustees, who accepted the trust, could not transfer it to others; they could fill vacancies occasioned by non-acceptance or death of other trustees, and here their power ceases: they cannot create successors to themselves. This is viewing them as having no powers, but what are expressly given by the will. But the Court consider that, if Charles Mitchell and Solomon Miller, after the decease of S. M. Mitchell, the other original trustee, held the legal estate in the premises, in trust for Maria, their conveyance of the same to the plaintiffs would vest in them the legal estate which they would hold, subject to the same trusts, and strangers to the trust have no right to complain. The *cestui que trust* alone can call them to an account, or have process to compel such conveyance as would subserve the object of the trust. This is not at all to be compared to the case of a mere power of attorney, with no right of substitution. But they hold the estate, and convey, with the approbation of Maria, given according to the terms of the will. This conveyance must, of course, be good to convey whatever estate was vested in Charles Mitchell and Solomon Miller. There is some difficulty in deciding that the estate was ever vested in them; for it would not become vested by the creation of the trust in and by the will, without an acceptance, also, by the trustees. There appears no evidence of any explicit acceptance of the

*Chittenden,*
*December,*
*1825.*

*Mitchell and*
*Turner*
*vs.*
*Stevens.*

trust, either by C. Mitchell or S. Miller. But, upon mature consideration, the Court decide, that their conveyances to the plaintiffs are sufficient evidence of their acceptance of the trust for the present purpose; sufficient evidence of their consenting and agreeing to become the conduit, through which the legal estate should pass to the plaintiffs, in trust for Maria.

The third question arising in the case is, whether the deed to the plaintiffs is rendered void by the adverse possession of the defendant, at its date? The Court consider it not void. The case is not within the meaning of the statute of frauds; it is not attended with any of the mischiefs against which the statute provides, and ought not to be adjudged within the provisions of the act. Here is no conveyance of any beneficial interest, but only passing a trust estate from one to another; the beneficial interest still remaining in the same persons. It is a doing that voluntarily, which a court of chancery would compel, if refused.

These several questions being thus disposed of, the Court direct judgment to be entered for the plaintiffs, upon the verdict.

*William A. Griswold,* attorney for the plaintiffs.

*Charles Adams,* attorney for the defendant.