Hon. JOHN PIERPOINT,
Hon. LOYAL C. KELLOGG, } Assistant Judges.
Hon. ASAHEL PECK,

---

### Charles A. White *v.* Willard Fuller.*

*Public Rights.   Partition.   Adverse Possession.   Lease.   License.*

The proprietary right of the town of Belvidere in the land reserved by its charter for the use of schools in the town, was unaffected by the annexation of the land to the town of Eden under the act of 1831, (Acts of 1831, No. 13.) The legislature could not have made any change in the appropriation of the rents or use of this right without the consent of the town of Belvidere.

The partition of the proprietary rights reserved for public use in the charter of said town, made in pursuance of an act of the General Assembly in 1861, was unaffected by the adverse possession of the plaintiff, who had been in the actual and exclusive possession for eight years.

---

*This case was argued at the August Term, and re-argued at the General Term, 1864, and the opinion delivered at the August Term, 1865.

The proprietors of these rights acquired no new right by the partition except the right to hold their shares in severalty instead of in common, and no right of the plaintiff was impaired or affected in consequence of the partition.

Adverse possession could give no title to these lands against the rightful original owners.

One of the lots in controversy was reserved for the support of schools in the town, and one for a county grammar school, and it was *held* that leases of these lots executed, after the partition, to the defendant by the selectmen of the town and the trustees of The Lamoille County Grammar School, the latter being a corporation by that name duly established by law, were not void under the statute, (C. S. p. 387, § 29;) this statute not being applicable to conveyances executed by public agents or officers acting in the line of their official duty, and these leases being regarded as conveyances of that character.

But these leases, even though defectively executed as such, were, if valid instruments between the parties, good as a license to the defendant to enter upon the land in controversy, and were in this sense a complete justification in this action of trespass for such entry, &c.

If an instrument contain the essential features of a lease, creating a tenancy and reserving an adequate annual rent, with a right of re-entry on the non-payment of rent or non-performance of other conditions, it will not be void as a lease though it be perpetual in duration. Moreover, this objection is not available to one who is a stranger to the title.

Under the provision of the statute, (G. S. p. 160, § 78,) the selectmen of Belvidere had ample authority to execute a proper lease of this land. And this authority still remained in them after the land was annexed to the town of Eden.

Doubted whether the lease to the defendant by Mr. Pike as Treasurer of The Trustees of the Lamoille County Grammar School, by virtue of the vote of February 7th, 1839, that "the Treasurer of the board shall hereafter have power to execute leases," &c., can be supported as a conveyance, but it is held sufficient as a license to the defendant to enter upon and occupy the land, and that to this extent it should be regarded as an act authorized by the corporation, and as such it would be as effectual in supporting the defendant's justification of his entry and acts on the land complained of, as it would be if it were the lease of the corporation duly executed.

TRESPASS *quare clausum fregit.* Plea the general issue and notice. Trial by court December Term, 1863, ALDIS, J., presiding. The facts in the case are fully stated in the opinion of the court.

To the decision of the court over-ruling points insisted on by the counsel for the plaintiff and to the judgment rendered for the defendant, the plaintiff excepted.

*Brigham & Waterman*, for the plaintiff.

I. In the construction of the charter of the town of Belvidere, the intention of the grantor is to be found in the charter itself. The tendency of modern decisions is to look more to the instrument itself,

and less to extrinsic circumstances. *Schooner Polina's cargo* v. *The United States*, 7 Cranch 52, 60 ; *King* v. *Inhabitants of Ramsgate*, 6 Barn. & Cress. 712, 715 ; *King* v. *Poor Law Commissioners*, 6 A. & E. 1, 7 ; *Lamond* v. *Effie*, 3 Q. B. 910 ; *Everett* v. *Wells*, 2 Scott N. C. 531 ; *Newell* v. *The People*, 3 Seld. 97 ; *Barker* v. *Esty et al. & Tr.*, 19 Vt. 131 ; Sedgwick on Stat. and Con. Law, 243 et seq.   2. The words of the charter are to be taken according to their natural and obvious import ; *a verbis legis non est recedendum.*   *Forrest* v. *Forrest*, 10 Barb. S. C. R. 46 ; *Edrich's case*, 5 Co. p. 118.   3. The charter should be strictly construed. *Lees* v. *The Manchester and Ashton Canal Co.* 11 East. 652 ; *Commonwealth* v. *City of Roxbury*, 9 Gray, 492.

II.   The title of the plaintiff was confirmed and established by the 2d section of the act of 1861.   Every clause and word of a statute shall be presumed to have been intended to have some force and effect.   Opinion of the Justices, 22 Pick. 573.   Besides, private statutes made for the accommodation of particular citizens or corporations, ought not to be construed to affect the rights or privileges of others, unless such construction result from express words, or from necessary implication. *Coolidge* v. *Williams*, 4 Mass. 140, 145 ; *Wales* v. *Stetson*, 2 Mass. 143, 146 ; *Thacher* v. *Dartmouth Bridge Co.*, 18 Pick. 501.

III.   The leases were void on account of adverse possession.   C. S. 387, § 29 ; *Robinson* v *Douglass*, 2 Aiken, 364.

IV.   S. S. Pike, the treasurer of The Lamoille County Grammar School, had no authority to execute a lease, and therefore the lease executed by him was inoperative and of no effect.   1.   By the act of 1836 incorporating The Lamoille County Grammar School, the trustees are specially empowered to lease its lands, and they are not at liberty to delegate this power.   A delegated authority can be executed only by the person or persons to whom it is given. Roll. Ab. 330 ; 9 Co. 77 b. ; 2 Roll. Ab. 9, 2 Kent's Com. 633 ; *Cole* v. *Wade*, 16 Ves. 27 ; *The Inhabitants of Stoughton* v. *Baker*, 4 Mass. 522.   And this general and well established principle of law, applies equally to persons deriving their authority under a legislative enactment. *Lyon* v. *Jerome*, 26 Wend. 485.   2.   Whatever authority passed to the treasurer by the vote of the trustees of February 7th,

1839, that authority did not descend upon S. S. Pike, who was appointed treasurer many years after, but was determined, whenever, from any cause, their treasurer, Joseph Waterman, went out of office.

V. The lease from the selectmen of Belvidere is of no effect, and therefore affords no justification to the defendant. 1. Belvidere ceased to have any interest in public lands which might have been located in that section of the town, after it was annexed to Eden. The act of November 3d, 1831, annexing a part of Belvidere to Eden, makes no exception or mention of public lands, and it is to be presumed that Belvidere then relinquished whatever claim she might have to public lands located in that part of the town. This view of the case is greatly strengthened by the lapse of more than thirty years without any claim of right on the part of Belvidere, and she is now estopped from asserting that claim. The legislature has power to alter, divide, modify, or abolish a municipal corporation. *Montpelier* v. *East Montpelier*, 27 Vt. 706. Towns are public corporations, created for political purposes, and as such subject to the control of the legislature. Dart. College Case, 342; *Windham* v. *Portland*, 4 Mass. 384; *Colburn* v. *Ellis*, 7 Mass. 89. At all events the rights and interests of a town or other corporation, may be divested by its consent. 2 Bac. Abr. 9, 13; *Poultney* v. *Wells*, 1 Aiken, 180. *Montpelier* v. *East Montpelier*, 27 Vt. 706. If this assent do not expressly appear, it will be presumed from the acts and acquiescence of the parties. *Poultney* v. *Wells*, 1 Aiken 186–7; *Cobb* v. *Kingman et al.*, 15 Mass. 197. 2. Even if the use and interest in these lands enured to Belvidere, the selectmen of that town could not execute a valid lease. G. S. 608, § 1.*

VI. The authority given the selectmen of Belvidere and the trustees of the Grammar School to make leases, cannot be extended to empower them to execute conveyances in fee. *Bush* v. *Whitney*, 1 D. Chipman, 369; *Lampson et al.* v. *New Haven*, 2 Vt. 14. A lease to continue as long as grass grows and water runs, conveys a fee in the use. *Stevens* v. *Dewing*, 2 Vt. 411; *Arms* v. *Burt et al.*, 1 Vt. 303. These are not technical leases. A lease is a conveyance of lands, or tenements, for life, for years, or at will, but always for a

* But see p. 160, § 78.

less time than the lessor hath in the premises.   2 Black. Com. 318. It has been held, that if a lessee for years grant the lands to another for the whole term he has therein, it will be construed to be an assignment, and not a lease, for there is no reversion in the party so granting.   *Poultney* v. *Holmes,* Stran. 405 ; *Palmer* v. *Edwards,* Doug. 187, in notis ; Adams on Ejectment, 202.

*W. G. Ferrin* and *S. S. Pike,* for the defendant.

I.   The lots in question, to wit., 163 and 164, (where the alleged acts of trespass were committed,) were severed to the grammar school right and the right for the support of schools, unless this partition was *void* on account of the plaintiff's *adverse* possession.   The court below find that these lots were set to these public rights *in the original survey and division of the town.*

The owners of these rights had the same right to own and occupy these lands as *tenants in common* before the partition that they now have to own and occupy them in severalty.   The act and partition did not affect the plaintiff's title, nor his possession, nor did it affect his right of possession as against the owners of these lands.   It simply gave the grammar school and the town of Belvidere the same rights as to this plaintiff that *all* the owners of the rights had against him prior to the act and the partition under it.   It was perfectly competent for the town of Belvidere to have turned out the plaintiff's cattle from a pasture on lot No. 163 or 164, or from any other one of these lots before the act was passed and the partition made, for the town was owner of the whole tract as *tenants in common* and as against this plaintiff.   Laws of 1861, p. 41.

II.   During the plaintiff's possession of the land in question, he could not have such an adverse possession as could possibly by the law then and now in force avail him anything as against the owners of these public rights.   He could gain no rights or titles of these public lands by any adverse possession as against the owners or any one holding under them, and we submit that the statute of 1807 is not applicable to these leases nor to the plaintiff's possession.   *University of Vt.* v. *Reynolds,* 3 Vt. 542.

III.   But again, suppose the statute of 1807 were applicable to these leases, and to the lands.   We insist that if the court should so decide, the plaintiff can derive no benefit from it.   It has be-

come *res adjudicata* in this state that such conveyance is valid as between the grantor and grantee, lessor and lessee, and that a recovery in the name of such grantor or lessor, will enure to the benfit of the grantee or lessee. *Edwards* v. *Parkhurst*, 21 Vt. 472 ; *University of Vt.* v. *Joslyn*, 21 Vt. 52 ; *Edwards* v. *Roys*, 18 Vt. 473.

IV. The treasurer of the grammar school, S. S. Pike, had the right by virtue of the power delegated to him, to lease the lands for the corporation. It has been fully decided in this state that every reasonable *intendment* is to be made in favor of the regularity of the proceedings of private corporations in their corporate *acts. McDaniels* v. *Flower Brook Manf. Co.*, 22 Vt. 274.

V. The town of Belvidere had the right to lease these lands after they were annexed to Eden. The *act* of the legislature annexing the territory to Eden is entirely silent on the subject of these public lands. We insist that it clearly shows that the legislature did not *intend to* divest the rights of Belvidere to these lands. The legislature had no constitutional power to do so without the consent of the inhabitants of the town. *Poultney* v. *Wells*, 1 Aiken, 180 ; *Montpelier* v. *East Montpelier*, 27 Vt. 204, and cases cited ; Session Laws of 1831, p. 12.

VI. These leases are not *void* because perpetual. They are in the usual form of nearly all such leases in the state. They convey the use of the lands as *long as wood grows and water runs*, but reserve an annual rent forever, and in this respect are distinguished from the cases in the 2d Vt. and D. Chipman.

The opinion of the court was delivered by

Kellogg, J. This is an action of trespass *quare clausum*, and the plaintiff's declaration describes the close on which the alleged acts of trespass complained of were committed as being in the town of Eden, and also as being the lots numbered 163 and 164 in that part of Eden which formerly belonged to and formed a part of the town of Belvidere. In the charter of the town of Belvidere, "*the usual quantity of land reserved in other townships*" was reserved "*for public uses*," consisting of five proprietary rights or shares, one of which was for the use of the University of Vermont, one for the first settled minister in the town, one for the support of schools in the town, one for a county grammar school, and one for the support and propagation of

the gospel. In the proprietary division of the town, eight lots, numbered from 162 to 169 inclusive, beginning at the nort-east corner of the town and extending westerly in the range of lots next to the north line of the town, were set to these five rights, as public lands, but were left undivided between these rights; and no division or partition of these lots was made until the 1st September, 1862, when they were divided by a committee appointed by an act of the General Assembly, approved November 20th, 1861. (Acts of 1861, No. 48.) In this division, separate and distinct portions of the lots numbered 163 and 164 were set to the town school right and the Lamoille County Grammar School right, respectively, pursuant to that act. By an act of the General Assembly passed November 3d, 1831, (acts of 1831, No. 13,) a part of the town of Belvidere was set off and annexed to the town of Eden, and in the part thus anexed to the town of Eden were the lots numbered 163 and 164, and each of the other of the eight lots above referred to except the lot numbered 169. The lots numbered 163 and 164 remained wild and uncultivated up to the year 1855, when the plaintiff took possession of the same under a deed to himself and Edwin C. White, from one James Brown, dated 31st January, 1855, conveying all the right and title which the said Brown had in these two lots. On the 29th March, 1859, Edwin C. White, by a similar quit-claim deed of that date, conveyed his right and title in these two lots to the plaintiff. After the plaintiff went into possession of these lots, he cleared and cultivated about thirty acres of the same, and continued to occupy both lots from the time of his first entry thereon in 1855 until about the 1st May, 1863, when the defendant entered and drove the plaintiff's cattle out of the pasture thereon, and took exclusive possession of the parts or portions of these lots which, in the division before referred to, were set to the town school right and to the grammar school right. The alleged acts of trespass by the defendant which are complained of were committed on this land which was set to these two rights in that division. By an act of the General Assembly, approved November 15th, 1836, (acts of 1836, p. 136, No. 83,) a county grammar school for the county of Lamoille was established in the town of Johnson, and a corporation was established by the name of *The Trustees of the Lamoille County Grammar School,* and

the rents and profits of all lands lying within the county of Lamoille and granted for the support of grammar schools were appropriated for the use and benefit of the grammar school so established, and the trustees of the grammar school were authorized to lease all such lands which had not then been leased, and to execute to tenants in possession new leases of the lands which had been previously leased. It is not questioned that this appropriation of the use of these lands was lawfully made. *Trustees of Orange County Grammar School* v. *Dodge,* Brayt. 223 ; *Trustees of Caledonia County Grammar School* v. *Burt,* 11 Vt. 632, 641, 688. The selectmen of the town of Belvidere conveyed to the defendant, by a lease dated the 25th November, 1862, the land which was set to the town school right in the division above referred to, and a lease was executed in the name and on behalf of the trustees of the Lamoille County Grammar School, by S. S. Pike, the treasurer of that corporation, dated the 9th of December, 1862, conveying to the defendant the land which was set to the county Grammar School right in the same division. Each of these leases reserved an annual rent of seventeen dollars and fifty cents, payable in money, and contained other reservations and conditions, with a clause authorizing a re-entry on behalf of the lessor for the non-payment of the rent or the non-performance of the conditions. The *habendum* clause of each lease was to have and to hold "*as long as grass grows and water runs.*" The defendant claims title to the *locus in quo,* and justifies the alleged acts of trespass, under these leases.

The right which the town of Belvidere originally had in the land which was reserved and appropriated by its charter for the support of schools in that town was clearly a right in the nature of proprietorship. The town as a municipal corporation held the legal title as a trustee for a use which was perpetual, and it could not use the rents and profits of the land for any purpose other than that for which they were reserved and appropriated by its charter. *Montpelier* v. *East Montpelier,* 27 Vt. 704. Has the town ever been divested of this right of proprietorship? Certainly it has not by the act of 1831, under which a portion of its territory was set off and annexed to the town of Eden, because that act makes no mention of any public lands, and it transferred nothing to the town of Eden except the

right of municipal jurisdiction over the territory which was set off from Belvidere and annexed to Eden. It merely provided for the annexation of a part of the territory of one town to the other, without at all interfering with any vested right of proprietorship in the part so set off and annexed. The legislature could not have made any change in the appropriation of the rents or use of the town school right without the consent of the town of Belvidere. *Poultney* v. *Wells*, 1 Aiken, 180 ; *Trustees of Caledonia County Grammar School* v. *Burt*, 11 Vt. 632. Until the plaintiff entered on the land in 1855, the possession was vacant, and while the possession was vacant no presumption could arise against the legal estate or title. *Appleton et al.* v. *Edson*, 8 Vt. 239. All the lands belonging to the public rights in the town of Belvidere remained undivided as between these rights until the partition was made by the committee appointed by the act of 1861, and, until that partition was made, the town of Belvidere had only a right in common in undivided land. Immediately after the making of that partition, the selectmen of the town of Belvidere asserted the right of that town to the land set to its town school right by leasing this land to the defendant. No relinquishment or abandonment of its right by that town either to the town of Eden or to the plaintiff can be presumed, because no right to this land was ever asserted or claimed in behalf of the town of Eden, and the plaintiff never claimed any right to this land as derived from either town, and the right of the town of Belvidere to this .land was asserted as soon as it became perfected by the partition made under the act of 1861. We therefore regard the right of the town of Belvidere in the land belonging to its town school right as remaining unaffected by the annexation of the land to the town of Eden, and as continuing in its original force up to the time of the making of that partition. It is not claimed that the county Grammar School had, at the time when that partition was made, lost or been divested of its interest in the land belonging to the Grammar School right. Before this partition was made, the town of Belvidere and the Lamoille County Grammar School stood in the character of proprietors or tenants in common of the whole undivided tract included in the eight lots of public land, and had the same right to occupy the land as tenants in common which

they have, since the partition was made, to occupy their respective shares in severalty.

The plaintiff was in the actual and exclusive possession of the two lots now in controversy, " claiming them in his own right and adversely to all the world," from the time of his first entry thereon in 1855 until he was dispossessed by the defendant in May, 1863. Did his adverse possession have any effect upon the validity of the partition? The act of 1861 providing for the partition declares in its 2d section that the partition shall have no effect upon the title of any private person possessing or holding adversely any of the public lots, and the plaintiff must be treated as having precisely the same title and right since the partition was made which he would have had if no partition had been made. The apparent purpose of the act was to provide for the partition, without creating, enlarging, changing, or affecting any private right which had previously accrued. The plaintiff had no interest whatever in the partition, and nothing which can be called a right of his is interfered with by it. His title, possession, and right of possession remain the same as before, and his position in respect to the land in controversy is rendered no more unfavorable in consequence of the partition. If, before the partition was made, he could have asserted a title or right to the land in controversy which would have been good against all of the proprietors of these public rights, the same title or right is still available to him against those of the proprietors to whose shares this land was set in the partition to be held in severalty. The proprietors of these rights acquired no new rights by the partition except a right to hold their shares in severalty instead of in common, and no right of the plaintiff is impaired or affected in consequence of the partition. If the plaintiff is left with the full measure of his title or right unaffected by the partition, he is without any ground of complaint; and he is in no position to complain on the ground that the act providing for the partition did not confer upon him a right or privilege which he did not previously have in the lands in controversy. We regard the partition as being unaffected by the adverse possession of the plaintiff, and we are satisfied that it was intended by the act providing for the partition that all parties interested in the land to be divided

should stand upon their existing rights, and that there was no purpose to enlarge, modify or affect any rights which had previously accrued.

The right of the town of Belvidere and of the Trustees of the Lamoille County Grammar School in the public lands of that town could not be affected by any statute of limitations, and the length of adverse occupancy and enjoyment which would make a perfect title against any private right could give no title to these lands against the rightful original proprietors. (Acts of 1854, No. 14 ; *University of Vermont* v. *Reynolds,* 3 Vt. 542 ; G. S., p. 442, § 4.) This was the position in which the plaintiff stood as against the defendant's lessors. But he claims that the leases executed to the defendant by the selectmen of the town of Belvidere and the Trustees of The Lamoille County Grammar School were void under the statute, because, at the time when they were executed, he, (the plaintiff,) was in the actual possession of the land under a claim of title adverse to the lessors. ' (C. S., p. 387, § 29.) The statute referred to was first passed in 1807, and its object, as expressed in its title, was "to prevent fraudulent speculations, and the sales of choses in action." 1 Laws of Vermont, Tolman's Comp., p. 196 ; Slade's Comp. Laws of Vermont, p. 171. The application of the statute to any particular case is to be ascertained by taking into consideration its declared object or purpose and the course and tendency of the decisions under it. The statute was merely a legislative declaration of an established principle of the common law. (*Robinson* v. *Douglass,* 2 Aik. 364 ; *University of Vermont* v. *Joslyn,* 21 Vt. 52.) Where the conveyance is by operation of law, as by levy of execution, (*Farnsworth* v. *Converse et al.,* 1 D. Chip. 139,) or by an officer of the state or ' the United States, (*Aldis, Exec'r,* v. *Burdick,* 8 Vt. 21,) or where a trust estate is conveyed to the uses for which it was originally created, (*Mitchell et al.* v. *Stevens,* 1 Aik. 16,) or where a conveyance is made by a trustee to his *cestui que trust,* as in the case of an administrator holding the title for the benefit of the heirs, and where a court of chancery would compel a conveyance, (*Appleton et al.* v. *Edson,* 8 Vt. 239,) and in the case of an assignment of a mortgage, (*Converse* v. *Searls,* 10 Vt. 578,) the conveyance has not been considered as falling within the spirit, import, or operation of the statute,

or as being within the mischief sought to be remedied by it, notwithstanding there was, at the time of the execution of the conveyance an adverse possession by a stranger of the real estate conveyed. A conveyance by an administrator under an order of the probate court, or by an assignee in bankruptcy, or by a collector on the sale of land for taxes would fall within the same rules of decision. The lands in controversy in this case were reserved for *public* uses, and the selectmen of the town of Belvidere and the Trustees of the Lamoille County Grammar School were the agents of *public* corporations, and it was made their duty by the statute, as such agents, to take the management and care of these lands. The statute has never been regarded as applicable to conveyances executed by public agents or officers acting in the line of their official duty; and we consider these leases as being conveyances of that character. In our opinion, they ought not to be treated as being within the operation of the statute. But even if this were otherwise, the situation of the plaintiff would, in this action, remain unchanged. The validity of a conveyance executed when a third person is in adverse possession is not, as between the parties to it, in any manner affected by the statute,—the conveyance being void only, as to the person holding adversely at the time of the conveyance and those in privity with him. The adjudged cases are and always have been uniform in respect to this rule. A deed executed when a third person is in adverse possession, being good as between the parties, will enable the grantee to do any such acts, in the name of the grantor, as may be necessary to establish the title of the grantor, and such title, when established, will enure to the benefit of the grantee, and the deed will give to the grantee license to do all and any such acts upon the land as the grantor himself might do. *Edwards* v. *Roys*, 18 Vt. 473; *University of Vermont* v. *Joslyn, ubi supra.* A mere verbal license from the lessors to the defendant to enter upon the land in controversy would have been a complete justification to him in this action of trespass; and these leases, if they were valid instruments as between the parties, were equivalent to a license to the defendant to enter and enjoy the lands, and were a sufficient authority from the lessors to do all the acts which are complained of by the plaintiff as acts of trespass. Either of these instruments might be good as a license even though

defectively executed as a lease. In *Lampson et al.* v. *Town of New Haven*, 2 Vt. 14, it is said (p. 16) that "the conveyance from the selectmen to Lampson may operate as a license far Lampson to occupy, so as not to leave him a trespasser upon the town, but as a conveyance of the land, for which it was intended, it is void both upon principal and authority."

The plaintiff also claims that, as the *habendum* clause of both leases was " to have and to hold as long as grass grows and water runs," the leases were equivalent to conveyances in fee, and that an authority given to the selectmen of Belvidere and the Trustees of The Lamoille County Grammar School to execute leases cannot be extended to empower them to execute conveyances in fee. If the real character of these instruments was that of conveyances in fee, they were undoubtedly void, as was held in *Bush* v. *Whitney*, 1 D. Chip. 369, and in *Lampson et al.* v. *Town of New Haven*, 2 Vt. 14. But we do not regard this objection as available to one who is a stranger to the title, and we are not satisfied that such is the legal character of these instruments. We find in each apt words for a lease, creating a tenancy with specific rights and duties as between the parties, reserving a substantial and adequate rent payable annually during the whole term of the holding, and authorizing a re-entry for the non-payment of the rent or the non-performance of the conditions. In *Arms* v. *Burt et al.*, 1 Vt. 303, and *Stevens* v. *Dewing*, 2 Vt. 411, the instruments which were adjudged to be conveyances in fee, though in form leases " for as long as wood grows and water runs," contained no reservation of rent, and were intended to be, and in effect were, conveyances of the estate in fee on condition. In the case of the *Propagation Society* v. *Sharon et al.*, 28 Vt. 603, the lessee was " to hold as long as water runs and wood grows," on his yielding and paying a rent of one barley corn annually, *if demanded*, and the instrument was considered to be a conveyance in fee, though a lease in form, on the same ground of decision ; but BENNETT, J., in delivering the opinion of the court in that case, distinctly intimates that if a substantial rent had been reserved, or if the instrument had created the relation of landlord and tenant between the parties, it would have stood upon different ground, and would have received a different consideration. The objection to these instru-

ments is that they are for a term equivalent to an estate in fee ; but leases of short duration tend to discourage agricultural enterprise and improvement, and, in the case of wild lands, are wholly imprac- ticable, and we are satisfied that the legislature in conferring the au- thority to " lease" such lands had reference to the meaning of that word according to its popular use rather than to its strict technical definition.    The whole force of this objection to the validity of these leases consists in the fact that they are perpetual in duration ; but in the case of *Lampson* v. *Town of New Haven, ubi supra,* this feature of the lease was not considered as at all affecting its validity, because it was a part of the relief decreed in that case that the town should execute "a *perpetual* lease of the Glebe lot, reserving a reasonable annual rent, with the right to re-enter for the non-payment of rent, or for waste committed," (see p. 19,) and the previous lease, which was adjudged to be void, was held to be void not on account of its dura- tion, but because it reserved no annually accruing rent, and was intended to be, and was in fact, a sale and conveyance of the fee. Each of the leases now under consideration contain all of the essen- tial features of the lease which was decreed to be executed in that case, and, if either is at all subject to exception, it is only upon grounds which would be equally applicable to that lease.    We have been unable to find any case in which a lease creating a tenancy and reserving an adequate annual rent, with a right of re-entry on the non-payment of the rent or non-performance of other conditions, has been adjudged to be void on account of being perpetual in its dura- tion ; and, with the distinct recognition in the case of *Lampson et al.* v. *Town of New Haven* of the validity of such leases, we should be satisfied to hold that even if the objection which the plaintiff takes to the validity of these leases on the ground of their being perpetual in duration was available to or could be asserted by him, it is not well founded, and that both of these instruments were such as the lessors were authorized by statute to execute.

The plaintiff claims that even if the land which was set to the town school right is to be considered as still belonging to the town of Belvidere, its selectmen could not execute a valid lease of it, and we are referred to the Compiled Statutes, p. 510, § 1, (G. S., p. 608, § 1,) as being the only statute provision authorizing the select-

men to execute leases of the public lands. That provision is applicable in terms only to lands granted as glebes, or to the use of the ministry, or the social worship of God, and to the first settled minister. But, by another provision of the statute, (C. S., p. 153, § 66, G. S., p. 160, § 78,) the selectmen are expressly authorized to take charge of and lease all lands appropriated for the use of schools in their town, and, under this provision, the selectmen of Belvidere had ample authority to execute a proper lease of this land. It is suggested, rather than claimed, that this authority to take charge of and lease these lands is conferred upon the selectmen of the town of Eden, in which town the lands lie, although that town has no interest in the lands or in the appropriation of the rents derived therefrom, and not upon the selectmen of the town of Belvidere, to which town the lands belong; but we are satisfied that this construction is wholly inconsistent with the purpose of the statute and could not have been intended by its framers. It would practically give the entire control of the property to those who would have no interest in it, and it can be supported only by preferring a narrow interpretation of the letter of the statute to its plain sense and meaning. *Ratio legis est anima legis.* "As the fruit and profit of the nut lies in the kernel, and not in the shell, so the fruit and profit of the law consists in the sense more than in the letter." 2 Plowd. 465.

The plaintiff contends that the lease executed to the defendant in the name of the Trustees of The Lamoille County Grammar School by S. S. Pike, the Treasurer of that corporation, was void, on the ground that Mr. Pike had no authority to execute such a lease. It appears that at a meeting of the corporation held on the 7th of February, 1839, it was voted, " That the Treasurer of this Board shall hereafter have power to execute leases of any and all lands belonging to this institution, which shall be as effectual and binding as if signed by each and every trustee." When this vote was passed, Joseph Waterman was the Treasurer of the corporation, but, many years afterwards and before this lease was executed, Mr. Pike was elected as its Treasurer, and held that office at the time when this lease was executed. By the act of incorporation, the Trustees of The Lamoille County Grammar School were invested with full power to lease all the lands lying within the county of Lamoille, and granted for the

support of grammar schools, which were not then leased. The plaintiff claims that this is a special power conferred on the trustees personally and collectively, which could not be delegated. If the power was conferred on the trustees as *persons*, it could not be executed by any agent delegated or appointed by them, because the act of incorporation contains no provision for the appointment of such an agent, and delegated power cannot itself be delegated except under a special authority for that purpose. But we think that the fair and reasonable interpretation of this provision of the act of incorporation is that the power is conferred on the corporation, and not on the trustees as *persons*. The corporate name was, "*The Trustees of the Lamoille County Grammar School,*" and the provision in the act that the trustees of The Lamoille County Grammar School may lease the land is equivalent to a declaration that the corporation bearing that name may lease the land. By statute, any public or private corporation is authorized to convey its real estate by an agent appointed for that purpose, (C. S., p. 384, § 3, G. S., p. 448, § 3,) but this statute was first passed in the Revised Statutes of 1839, and was not in force at the time of the passing of the vote of the 7th of February, 1839, which has been referred to. At the time of the passing of that vote, the treasurer had no authority *ex officio* to execute leases or other conveyances of its lands, and there was no statute authorizing the corporation to appoint an agent for such a purpose. But even if the corporation had then been authorized to appoint an agent to execute a conveyance of its real estate, by a statute similar in its provisions to the existing statute, we should be inclined to regard the appointment of the agent as implying a personal trust, and such a trust as could not be perpetuated by annexing it to an office. The existing statute seems to contemplate the appointment of an agent who is known to the members of the corporation by whom the appointment is made, and who can be ascertained from the vote by which the appointment is made. It may be doubted whether the lease executed to the defendant in the name of the corporation by Mr. Pike as its treasurer can be supported as a conveyance, but we think that it was sufficient as a license to the defendant to enter upon and occupy the land, and that, to this extent, it should be regarded as an act authorized by the corporation. By it, the corporation would be estopped

from treating the defendant as a trespasser for any act done on the land previous to its revocation or a repudiation of its validity as a conveyance; and, as a license from the corporation, it would be as effectual in supporting the defendant's justification of his entry and acts on the land which are complained of, as it would be if it were the lease of the corporation executed in all respects in strict conformity with the provisions of the statute.

Judgment of the county court for the defendant affirmed.

