CALEDONIA, THE TRUSTEES of the CALEDONIA COUNTY GRAMMAR SCHOOL
July,
1839.                        v. SAMUEL BURT.

The charter of the town of L. was granted to sixty four proprietors, each
to take one seventieth part of the township, which, with the six public
rights, were to make the whole township. This vested in the proprie-
tors one seventieth part each, and did not vest in them the title to the
other six parts, to hold in trust.

In relation to two of those rights, one for the use of a College, and one for
the use of Grammar Schools, within the state, the charter provided that
the same " and the improvements, rents, interests, and profits arising
therefrom shall be under the control, order, direction and disposal of the
General Assembly of the state forever." These shares or rights re-
mained with the legislature, and were at their entire and absolute control
and disposal, for the purposes for which they were sequestered.

A legislative grant, to a corporation aggregate, vests an absolute title, with-
out words of perpetuity, and the same cannot be afterwards controlled
by the legislature, any more than an absolute grant to individuals.

A grant made for the purpose of education can no more be, afterwards,
vacated or controlled by the legislature, than if made for a private pur-
pose.

In an ejectment, where the defendant entered as tenant to the plaintiff, he
cannot, under the general issue, dispute the corporate capacity in which
the plaintiff sues, nor can he take advantage of the informality of the
lease under which he entered.

EJECTMENT, to recover fifty acres of land in the town of Lyn-
don. Plea, not guilty, and trial by jury.

Upon the trial in the county court the plaintiffs gave in ev-
idence a copy of an act passed October 27, 1795, entitled
" An act establishing the county grammar school of the coun-
ty of Caledonia, in the town of Peacham."

The preamble to the act is as follows :

" Whereas, it appears to this assembly that the town of
" Peacham, in the county of Caledonia, is conveniently situ-
" ated as the place for the county grammar school in said
" county ;—

" And whereas, the inhabitants of said town of Peacham
" have, by their memorial to this assembly, proposed to make
" large and liberal donations for the founding of said school,
" provided that trustees be immediately appointed, with full
" powers to hold and lease the lands lying in said county, al-
" ready granted for that purpose, and such other lands, mo-
" neys, or other property as may hereafter be in any wise

"granted or donated for the use of said school."

By the first section of the act, it is enacted "that the
" place for the county grammar school in the county of Cale-
" donia, shall be in the town of Peacham, and that Alexander
" Harvey,"and eight others therein named, "be, and they here-
" by are, constituted and appointed trustees of said school, and
" they and their successors are hereby declared to be a body
" corporate and politic in law, to be called and known by the
" name of the trustees of the Caledonia County Grammar
" School, and the said trustees are hereby fully empowered
" to hold and lease the land lying within said county, granted
" for the use and benefit of a county grammar school, with
" such donations, in land or other property, as may hereafter,
" in any wise, be made, for the use and benefit of said institu-
" tion."

The second section of the act provides for holding the first
meeting, the appointing of officers, the making of by-laws, &c.

By the third section it is further enacted "that if the in-
" habitants of the said town of Peacham shall not, at the
" first meeting of said trustees, or at some proper time, by
" them appointed, make out and execute to the said trus-
" tees, good and sufficient assurances for the payment of all
" such money or other property as the said inhabitants have
" proposed to donate to said institution, agreeably to the true
" intent and meaning of the memorial hereinbefore mention-
" ed, then the said inhabitants shall forfeit all right to the
" benefit and privileges granted, or intended to be granted, by
" this act, any thing therein to the contrary notwithstanding:
" Provided, nevertheless, that the act shall not be construed
" to give to the county grammar school for the county of Ca-
" ledonia a right to any more than an equal proportion with
" other counties in the state, of the nett proceeds or avails of
" the lands granted for the use of county grammar schools
" in said state, whenever a future legislature shall by a law
" for that purpose, order a dividend of the same."

The defendant objected to the admission of the copy of
the act because it was not certified under the seal of the sec-
retary of state, but the court overruled the objection and ad-
mitted the copy.

The plaintiffs then offered in evidence the charter of the
town of Lyndon, granted by the state of Vermont, which

CALEDONIA,
July,
1839.

Grammar
School
v.
Burt.

CALEDONIA,
July,
1839.

Grammar
School
v.
Burt.

was admitted without objection, from which it appeared that the grant was made to sixty four individuals therein named, each to take one seventieth part, "which, together with the six following seventieth parts reserved to the several uses in manner following, included the whole tract or township, viz. one seventieth part for the use of a seminary or college, one seventieth part for the use of county grammar schools within said state ; lands to the amount of one seventieth part for the purpose of settling a minister or ministers of the gospel in said township ; lands to the amount of one seventieth part for the support of the social worship of God in said township, and lands to the amount of one seventieth part for the support of an English school or schools in said township, which said two seventieth parts for the use of a seminary or college, and for the use of county grammar schools, as aforesaid, and the improvements, rents, interests, and profits arising therefrom, shall be under the control, order, direction and disposal of the general assembly of said state, forever," and the proprietors were, by said charter, authorized to locate said two seventieth parts, justly and equitably, &c.— The proprietors were, also, authorized to locate the three other seventieth parts, reserved for the purposes, above stated, equitably, &c., which lands amounting to three seventieth parts, in the language of the charter, "when located, as aforesaid, shall, together with their improvements, rights, rents, profits, dues and interests remain unalienably appropriated for the uses and purposes, for which they are respectively assigned, and be under the charge, direction and disposal of the selectmen of said township, in trust to and for the use of said township forever." And the proprietors were authorized to dispose of the other seventieth part in such manner as they should judge best for the encouragement of erecting the first grist mill and saw mill in said town.

The plaintiffs also gave testimony tending to show that the records of the town of Lyndon, made by the proprietors' clerk, of the survey and division of the town, were lost ; that the town, for more than thirty years, had been allotted and divided, and the division generally acquiesced in ; that the land in controversy was a part of the lands reserved by said charter for the use of county grammar schools and that the

defendant was in possession of the land when this suit was commenced.

The defendant gave in evidence an act of the legislature, passed in 1831, establishing a grammar school at Lyndon; also, an act in favor of the grammar school at Lyndon, passed November 17, 1836, by which it is enacted that the rents and profits of all the lands in Lyndon, and other towns therein named, granted for the support of grammar schools, shall be appropriated for the use and benefit of said grammar school at Lyndon, and the trustees of said school at Lyndon were thereby invested with full power to lease all of said lands which were not then leased, and to receive all rents that should thereafter accrue on all of said lands that had been theretofore leased by the trustees of the grammar school at Peacham, and all tenants in possession or in interest were, by said last mentioned act, required to pay the rents that should thereafter accrue, to the trustees of the school at Lyndon: to which act there was annexed the following proviso:

" *Provided,* that nothing in this act shall be construed to prevent any future legislature from disposing of the avails of such lands, as they shall think proper. *And provided, also,* that if the supreme court shall adjudge this act to be unconstitutional, and that said rents and profits do not pass to the trustees of the Caledonia county grammar school at Lyndon, said trustees shall have no claim on the state for damages, but shall take this act at their own risk."

The plaintiffs here gave in evidence a lease of the land in question from the trustees of the grammar school at Peacham to Samuel A. Willard, dated September 4, 1823, which was objected to on account of the manner of its execution, it having been executed on the part of the plaintiffs, by the trustees under their hands and seals, and not under the seal of the corporation. The objection was overruled, and the lease admitted.

The plaintiffs also introduced a copy of a deed from said Willard to Milton Burt and Horatio N. Burt, conveying the same land, and testimony tending to show that the defendant admitted, at the time of the service of the writ, that his sons, the said Horatio and Milton, bought the farm, and that he lived on it by their permission; that at the time when the

CALEDONIA,
*July,*
1839.

Grammar
School
*v.*
Burt.

CALEDONIA,
July,
1839.
───────
Grammar
School
v.
Burt

act appropriating the rents to the Lyndon school took effect, there was a small sum due to the plaintiffs for back rents, which, together with the subsequent rents, had never been paid.

The plaintiffs further introduced testimony tending to prove, that all the conditions, recited in the preamble of the act incorporating the grammar school at Peacham, had been complied with.

The defendant here introduced *parol* testimony, tending to prove that the grammar school at Lyndon had been duly organized. The plaintiff objected to this evidence, but the court overruled the objection and admitted it.

From the testimony introduced, each party contended that that they were entitled to a verdict. But the court decided that, if the testimony was believed, the plaintiff was entitled to recover. The defendant submitted to a verdict and excepted to the decision of the county court.

*N. Baylies,* for defendant, contended that the clause in the charter of the town of Lyndon, declaring that the improvements, interests, rents and profits arising from the lands granted for the support of colleges and grammar schools, should be under the control, order, direction and disposal of the General Assembly of the state, forever, was a *declaratory covenant,* entered into by the grantors, with the grantees named in the charter, and should be solemnly kept. Platt on covenants, 21.

That all covenants in the charter, whether express or implied, were contracts within the meaning of the constitution of the United States, Art. 1. §10, which says, no state " shall pass an *ex post facto* law, or law impairing the obligation of contracts." *Fletcher* v. *Peck,* 6 Cranch, 136, 7, 8. *State of New Jersey* v. *Wilson,* 7 do. 164. *Dartmouth College* v. *Woodward,* 4 Wheat. R. 518.

II. That the charter of the grammar school at Peacham, from the words of the grant, giving the corporation power, only, " to hold and lease" the lands, there being no words of perpetuity in the grant, taken in connexion with the *declaratory covenant* in the charter of Lyndon, merely gave the plaintiff the right to *hold* and *lease* the lands *for the time being,* or at the will of the General Assembly;—that, to give the act a broader construction, would be a violation

of that part of the charter of the town of Lyndon, which puts the use of the lands under the control, order and direction of the General Assembly forever;—that, any other construction than that contended for by the defendant, would make the plaintiffs' charter void.

III.  That the act in favor of the grammar school at Lyndon, passed in 1836, was not repugnant to the charter of the town of Lyndon, but left all its obligations and covenants unimpaired, and could not be considered unconstitutional.

Presumptions are always in favor of the validity of laws if the contrary is not clearly demonstrated.  *Cooper* v. *Telfair*, 4 Dallas, 14.  6 Cranch, 128.

To hold this act constitutional would be in accordance with the decision in the case of the *Orange County Grammar School* v. *Dodge*, Bray. R. 223.

IV.  That whatever right the plaintiffs once had by their charter to hold and lease the land in question, and receive the rent, that right expired before the commencement of the present action ;—that, though the defendant could not be permitted to show that his lessors never had a title, yet, he may, on admitting that he once had a title, show that the lessors' interest had expired.  Comyn's Landlord and Tenant, 521.  4 Term R. 682.  3 M. & S. 516.  2 Stark. R. 230.

V.  That the lease, from the plaintiffs to Willard, was improperly admitted, for a corporation aggregate cannot make a deed otherwise than under the corporate seal.  4 Comyn's Dig. 256, 7, 8.  1 Bl. Com. 475.  6 Petersd. 435.  Id. 136, 444.  Oliver's Practical conveyancing, 278, note. Id. 345, 6. *Tippets* v. *Whittemore, et al.* 4 Mass. R. 595.  5 East's R. 148.

The corporators in their private capacity could not execute the lease.  7 Mass. R. 14.  16 do. 42.  6 Term R. 176.  9 Coke's R. 76.  2 East's R. 142.

*W. Mattocks, & J. Mattocks*, for plaintiffs.

The opinion of the court was delivered by

COLLAMER, J.—The most delicate and most important duty ever to be discharged by the judiciary, is to pronounce upon the validity of an act of the legislature ; a co-ordinate branch of the government.  While it is clear that such may

CALEDONIA,
July,
1839.

Grammar
School
v.
Burt.

CALEDONIA,
July,
1839.
————
Grammar
School
v.
Burt.

be its duty, yet it is generally clear that no act should be pronounced unconstitutional and void, upon any considerations of its impolicy or inexpediency, nor from any mere speculative, fanciful or doubtful incongruity with the constitution, but only on the most clear and unquestionable grounds.

In the present case both parties insist on the exercise of this power, by the court. On the part of the Lyndon School, it is insisted, that the grant to the Peacham School was unauthorized, and impaired the obligation of a contract, being in violation of the charter of the township of Lyndon ; and on the other hand, on the part of the Peacham school, it is insisted, that the act granting the lands to the Lyndon school was a violation of the previous grant of those lands to the Peacham school, and, therefore, unconstitutional and void. This seems to present a dilemma in which the court cannot avoid pronouncing an act of the legislature void.

By the grant to the Lyndon shool in 1836, it is provided " *if the supreme court shall hereafter adjudge this act to* " *be unconstitutional*"—" *said trustees shall have no claim* " *on the state for damages, but shall take this act at their* " *own risk.*" The legislature have, in effect, referred the question to the court and its opinion thereon. These two considerations relieve the discharge of this important duty, on this occasion, from much of its ordinary embarrassment and responsibility, arising from a conflict of power and opinion between the legislative and judiciary departments of the government.

The charter of the town of Lyndon was granted to sixty four proprietors, named ; each to take one seventieth part and, as is the expression of the charter, " which together with the six following seventieth parts, reserved to the several uses in manner following, include the whole tract or township"—" to wit, one seventieth part for the use of a college, one seventieth part for the use of county grammar schools, within said state." &c., " which two seventieth parts for the use of a seminary or college, and for the use of county grammar schools, as aforesaid, and the improvements, rents, interests and profits arising thereupon, shall be under the control, order, direction and disposal of the General Assembly of said state forever."

By this charter, each proprietor took one seventieth part

CALEDONIA,
*July,*
1839

Grammar
School
*v.*
Burt.

of the township and this was his whole interest. The said two seventieth parts never vested in him, or in them collectively, to hold in trust or otherwise. Those rights remained with the legislature and were at its entire disposal, except that the charter contained a declaratory covenant or plighted public faith that they should only be appropriated for the uses and purposes mentioned and to which, by the charter, they were sequestered and dedicated. That, under such a charter, the proprietors took only the one seventieth part was decided in *Pawlet* v. *Clark*, 9 Cranch, 292.

Over these two rights, the legislature had an absolute and entire control and disposal, for the uses and purposes for which they were reserved. Of the one for the use of grammar schools, it had the power to grant it to any one or more, and upon such limitations and conditions as the legislature chose to express, or without any condition whatever, in which case it would have only the implied condition that the use must ever be applied to the purpose of the grant. In relation to the other rights which were reserved in the charter, its provisions were entirely different. They " shall, together with their improvements," &c., " be *unalienably* appropriated for the uses and purposes for which they are respectively assigned," being uses entirely for the benefit of the inhabitants of the town, " under the charge, direction and disposal of the selectmen of said town, in trust, to and for the use of said town forever." Here, most clearly, the selectmen were to have a trust estate, for the town, and the lands were so to remain, *unalienably*, forever.

The power of the legislature being thus entire and absolute over these two first mentioned rights, for the purposes for which they were sequestered, we are next to inquire how this power has been exercised. In 1795, the legislature passed an act creating a corporation under the style of " the Trustees of the Caledonia county Grammar School," for the purpose of sustaining a grammer school at Peacham. In the preamble of that act they say, they are induced to this by the consideration, that Peacham is a suitable place, and by the memorial of the inhabitants giving assurance that they would make liberal donations, if the school could be then established and the trustees be authorized to hold and lease the lands sequestered in the different towns in the county for

CALEDONIA,
    July,
    1839.
────────
  Grammar
   School
     v.
    Burt.

the purpose. The act, after creating the corporation, proceeds to grant the lands in these words, "and the said trustees are hereby fully empowered to hold and lease the lands lying within said county, granted for the use and benefit of a county grammar school, with such donations in land or other property as may hereafter, in any wise, be made for the use and benefit of said institution." The act further provides that unless the inhabitants of Peacham fulfilled their assurances, and conveyed to the trustees the estate they had promised, they were to take nothing by the act; and the case finds they did so fulfil. The act then provides that any future legislature may, at any time, make an equal distribution of the avails of the county Grammar School lands among all the counties in the state.

It appears to us there can be no possible doubt of the intent of the legislature, as expressed in this act. It creates an aggregate corporation. It makes to that corporation a grant which unquestionably was intended to include the land in controversy, and included that or none. This grant being to an aggregate corporation, having perpetual succession, required no words of perpetuity, and was as unconditional and as absolute and of the same effect, as a grant to a man and his heirs and assigns forever. It is obvious that such, at the time, was the understanding of all concerned. The legislature annexed to the grant the express provision that a future legislature might distribute the avails of all such lands among the several counties; thereby clearly showing they understood that, by the grant, they parted with all control of the lands, except what they expressly reserved. The trustees so understood it, for they proceeded to make durable leases of the land. It must be it was so intended to be understood by the memorialists, as the case finds they made the promised endowments or grants, which could not have been expected, if it was understood the grant was subject to being immediately revoked.

In 1831, the legislature incorporated a second county Grammar School in Caledonia county, at Lyndon. In 1836 an act was passed, authorizing the trustees of this second school to take possession of the Grammar School lands in Lyndon, and certain other towns in the county, and to hold the same; and if the same had been leased, the tenants

CALEDONIA,
July,
1839.

Grammar
School
v.
Burt.

were to attorn to these trustees. Was this act contrary to the constitution of the United States? Did it impair the obligation of any contract?

As the supreme court of the United States is the tribunal of dernier resort in all questions of this nature, we should govern ourselves by their decisions. That the trustees of a college, grammar-school or seminary of learning is such a corporation as cannot, without their own consent, be modified, vacated or controlled by act of the legislature, as may be done with counties, towns or other municipal or civil corporations, is fully decided in *Trustees of Dartmouth College* v. *Woodward*, 4 Wheaton, 518. That a grant of land, by a state legislature, vests a title indefeasable by the state, and is *a contract* which the state has no power to impair by subsequent legislation, is fully settled in the case of *Fletcher* v. *Peck*, 6 Cranch, 87. That the grant was made for the purpose of public instruction, religious or literary, no more subjects it to subsequent legislative control, than if made for private use, was fully decided in *Terrett et al.* v. *Taylor et al.* 9 Cranch, 43. There is to this case the additional circumstance that it was made on a pecuniary consideration, as, by the terms of the grant, the inhabitants were to make certain conveyances to be entitled to its benefits. All the lands in Vermont, granted by charters from its Governor, under the authority of the legislature, are held by the same tenure, and not greater, nor more inviolable than that by which the plaintiffs hold theirs; and it cannot be considered that our citizens hold their farms at the mere will and pleasure of the legislature. The act of 1836 was, then, an act impairing the obligation of a contract, was contrary to the constitution of the United States, and void.

The decision in *Trustees of Orange county Grammar School* v. *Dodge*, Brayton, R. 223, is not an authority in point, on the present question. In that case, like the present, the grant authorized the legislature to make subsequent distribution of the rents of the lands among the several counties. The legislature assigned afterwards a part of the lands granted, to the county Grammar School in the then newly formed county of Washington, being the lands in those towns set off from the county of Orange. The reasons for the decision of the court are not given, but might

Caledonia,
July,
1839.
————
Grammar
School
v.
Burt.

have been these : The power of equal distribution, among all the counties, was in the legislature : Of the mode of effecting this, the legislature must be the arbiter : They might have been satisfied that such equal distribution would be produced by the grant they made to Washington county, and therefore, the new grant was a good exercise of the power expressly reserved in the grant. In the present case, the new grant is to a school in the same county, and by no possibility could it have been authorized by the reservation in the Peacham grant.

It appears by the case that the defendant entered upon the land under the plaintiffs, and was *tenant* to them. The defendant could not deny or compel the plaintiffs to prove their corporate capacity, under the plea of *Not Guilty.* 3 Peters' R. 408. 5 Vt. R. 93. Therefore, proof of the organization and proceedings of the plaintiffs was of no importance. Nor could the defendant, being a tenant, be permitted to object to the formality of the lease under which he held.

Judgment affirmed.