Present: Royce, Ch. J., Ross, Powers, Taft, Rowell, Tyler and Munson, JJ.

## FRANKLIN COUNTY GRAMMAR SCHOOL *v.* JAMES W. BAILEY AND WIFE.

*When grant of grammar school lands is irrevocable. Collateral issue.*

1. By its original charter certain lands in the town of Richford were reserved for the support of a grammar school. *Held*, that the act of the Legislature passed Nov. 7th, 1815, appropriating these lands to the use of the Franklin County Grammar School, and the subsequent acceptance and possession of these lands by the grammar school constituted an executed grant or gift, which subsequent Legislatures could not revoke, and that No. 258, Acts of 1884, appropriating the rents of said lands to School District No. 2 in Richford was unconstitutional.

2. If it is necessary to find any consideration for the grant of 1815, the fact that the grammar school assumed the burden of collecting and applying these rents, and relieved the State therefrom is an ample one.

3. The question whether the grammar school has so conducted as to forfeit its charter cannot be collaterally raised in defense of an action in ejectment for the unpaid rent.

This was an action of ejectment brought by the Franklin County Grammar School for certain leased lands for the non-payment of rent. Heard upon an agreed statement of facts at the September Term, Franklin County, 1888, Taft, J., presiding. Judgment for the defendants. The plaintiff excepts.

The lands were situated in the town of Richford and were a part of the lands originally set apart by the charter of that town for the support of a grammar school. They were held by the defendants under a lease from the Franklin County Grammar

School, granted in 1835. The rent reserved had been paid the lessor up to 1885. Since then it had not been paid, the claim being that by an act of the Legislature approved November 25th, 1884, these rents were transferred to School District No. 2 in Richford, which defended this suit.

The Franklin County Grammar School was incorporated in 1799, and soon after began the maintenance of a school under that title in the village of St. Albans, and continued the same as an independent organization until 1860, after which it was maintained in connection with the school in District No. 4 in St. Albans.

In 1815 the Legislature appropriated the grammar school lands in the county of Franklin to the Franklin County Grammar School by the following act:

" An Act appropriating the County Grammar School Lands in the County of Franklin.

" Sec. 1. It is hereby enacted by the General Assembly of the State of Vermont, that the several rights or shares of land in the county of Franklin granted to the use of the County Grammar Schools, in this State be and are hereby appropriated to the use of the Franklin County Grammar School instituted and established at St. Albans in said county of Franklin.

" Sec. 2. And it is hereby further enacted that the corporation of said Franklin County Grammar School shall hold the said rights or shares of land to themselves and their successors in trust for the use of the said Franklin County Grammar School forever.

" And it is hereby made the duty of said corporation to lease the said rights or shares of land for such time and for such rents as they shall deem just, and shall appropriate the rents and profits of said lands to the use and for the benefit of said Franklin County Grammar School in such manner as shall be most conducive to the interest and advantage of said school."

Under this act the said grammar school took possession of and leased the premises in question, and has since collected the rent upon them as above.

In 1884 the Legislature appropriated the rents arising from the grammar school lands in Richford to the support of a graded school in District No. 2 in Richford. The act was as follows:

"An Act relating to the Grammar School Lands in Richford, Montgomery and Fletcher.

"It is herereby enacted by the General Assembly of the State of Vermont.

"Sec. 1. All lands in the towns of Richford, Montgomery and Fletcher, granted to the use of grammar schools shall here-after be under the charge of the selectmen of said towns, respect-ively, to lease, collect rents and do any other business in respect to said lands which the different grammar schools and acade-mies have heretofore done, which have leased such lands; and the selectmen of said towns shall have the same authority in all matters pertaining to the charge of said lands that said acade-mies and grammar schools have ever held.

"Sec. 2. The money arising from the lease of said lands shall be appropriated for the support of the graded school in School District No. 2 in Richford, provided a grammar school department shall be maintained in such graded school, with thirty-five weeks of school during each year.

"Sec. 3. Such lands shall pass into the hands of the select-men on the first day of January, 1885, and this act shall not affect income from said lands falling due before said date.

"Approved Nov. 25, 1884."

Some question was made as to whether the Franklin County Grammar School had properly maintained a school since 1860, when it became to a certain extent merged in School District No. 4 in St. Albans. It was conceded that the grammar school had kept up its organization and collected the rents accruing from the grammar school lands, and applied these rents to school purposes; and under the opinion of the court the remaining facts become immaterial.

*Wilson & Hall*, for the plaintiff.

The grant of these lands was a contract, upon ample consider-ation, to a proper party, which is protected by the constitution of the United States. 2 Blacks. Com. 30; 2 Bur. Law Dict.

693; *Fletcher* v. *Peck,* 6 Cranch, 136.; Cool. Con. Lim. 334; Har. Am. Con. Law, 584; *Dart. Coll.* v. *Woodward,* 4 Wheat. 637.

This same question has been once decided in Vermont. *Caledonia County Grammar School* v. *Burt,* 11 Vt. 632.

Such grants are not subject to future legislative control. *Terrett et al.* v. *Taylor et al.,* 9 Cranch, 50; *Benson et al.* v. *Mayor et al.,* 10 Barb. 223; *Pawlet* v. *Clark et al.,* 9 Cranch, 292; *Fletcher* v. *Peck, supra;* *State of New Jersey* v. *Wilson,* 7 Cranch, 164; Har. Am. Con. Law, 734.

Suppose that the Franklin County Grammar School has, by its arrangement with District No. 4, forfeited its charter, which we deny, that objection cannot be made in this collateral proceeding. There must be a direct proceeding to declare the charter forfeited. Mor. Corp. s. 1015; *Matter of N. Y. Elevated R. R. Co.,* 70 N. Y. 337–8; *Heard* v. *Talbot,* 7 Gray, 119–20; 2 Wait Act. & Def. 347, 351.

*Powell & Brown,* for the defendants.

The court must be satisfied beyond a doubt that the act is unconstitutional before it will so declare it. *Fletcher* v. *Peck,* 6 Cranch, 87.

The contract protected by the constitution must be a legal contract, between competent parties, upon sufficient consideration. *Stone* v. *Mississippi,* 101 U. S. 814.

The act of 1815 did not grant the land itself, but merely the income from the land as it accrued. It conveyed a *chose in action,* not a *chose in possession.* 2 Blacks. Com. 442.

Since the grant was executory, there must be a consideration to render it binding. There was none. The fact that this land was to be applied to school purposes imports none. *Trustees of Bishop's Fund* v. *Rider,* 13 Conn. 87–104; *Trustees of Brook Academy* v. *George,* 35 Am. Rep. 769; *First Presbyterian Church* v. *Cooper,* 3 Law. Rep. A. 468.

Nor does the act itself. It was purely a voluntary grant. *Trustees of Bishop's Fund* v. *Rider, supra;* Black Con. Prohib. 30–1; *Dart. College* v. *Woodward,* 4 Wheat. 683; *Trus-*

tees of *Brook's Academy* v. *George*, 35 Am. Rep. 764; *Thorpe* v. *R. & B. Rd. Co.*, 27 Vt. 145; Mor. Corp. ss. 421–7; Cool. Con. Lim. 342–9; *Pennsylvania R. R. Co.* v. *Bowers*, 2 Law. Rep. A. 621 and cases there cited; *Louisiana* v. *New Orleans*, 109 U. S. 285–92; *Farrington* v. *Tennessee*, 95 U. S. 685; *Lord* v. *Litchfield*, 36 Conn. 124; *Tucker* v. *Ferguson*, 22 Wall. 584; *Herrick* v. *Randolph*, 13 Vt. 530; *Wisconsin R. R. Co.* v. *The Supervisors*, 93 U. S. 595; *Christ Church Hospital* v. *Philadelphia*, 24 How. 301; *East Saginaw Mfg. Co.* v. *City of East Saginaw*, 2 Am. Rep. 82, affirmed in 80 U. S. 373.

The act of 1815 was not a grant, it was a gift. 2 Blacks. Com. 440; *Forsyth* v. *Reynolds*, 15 How. 365.

A supplement to a charter which gives a new right without imposing an additional burden, may be revoked at pleasure. Black Con. Prohib. 30; 15 The Rep. 568.

By the act of 1815 the Franklin County Grammar School was made the agent of the State to collect and appropriate these rents. By the act of 1884 that agency was changed. This does not interfere with the vested rights of the tenant. *Walker* v. *Walker*, 2 West. Rep. 512; *Register* v. *Henchy*, 70 Mo. 189; *State* v. *Vernon County Court*, 53 Mo. 128; 2 Par. Con. 681. (3d Ed.)

The opinion of the court was delivered by

Ross, J. The right of the plaintiff to recover depends upon whether the act of the Legislature, approved Nov. 25, 1884, purporting to give the use of the lands sequestered or granted to the use of county grammar schools in the town of Richford, among which is the land sued for, is an act which the Legislature, under the circumstances, could lawfully pass. On Nov. 4, 1799, the Legislature passed an act incorporating the plaintiff, with the usual powers and rights of a corporation, for the purpose of maintaining a grammar school in St. Albans, in the county of Franklin, upon condition that the inhabitants of St. Albans should, within two years, erect a house for the grammar

school of the value of $800, and forever after keep the same in repair. It is conceded that the condition was complied with in erecting and keeping the house in repair to 1860. Then the plaintiff entered into an arrangement with School District No. 4 by which that district was to keep and maintain such a building on the lot of the plaintiff sufficient to accommodate one hundred pupils on certain considerations. This has been done. It is apparent that the defendants cannot, against their lease of the land from the plaintiff, in this suit, collaterally try the question whether this arrangement with the school district was such an act that the State by proper proceedings might have the charter which it had granted without reserving the right to alter, modify or repeal, set aside and declared forfeited. It is not one of the issues raised and cannot be so adjudged collaterally in this suit. After the charter of the plaintiff and after it had complied with the condition imposed, and while it was maintaining such a school building as required by the condition, the Legislature, Nov. 7, 1815, passed an act entitled an act appropriating the county grammar school lands in the county of Franklin. By section one of this act, the several shares of land in the county of Franklin granted to the use of the county grammar schools in this State are appropriated to the use of the plaintiff. By section two, it is enacted that the plaintiff shall hold the said rights or shares of land to themselves and successors in trust for the use of said Franklin County Grammar School forever. And it is hereby made the duty of said corporation to lease the said rights or shares of land for such time and for such rents as they shall deem just, and shall appropriate the rents and profits of said lands to the use and for the benefit of said Franklin County Grammar School in such a manner as shall be most conducive to the interest and advantage of said school. In this act the Legislature reserved no right to alter, modify or repeal the act, and there existed then, nor now, no constitutional limitation saving such right to future Legislatures. It is apparent that the plaintiff might accept or reject the provisions of this act.

It does not appear whether this act was passed by the procurement of the plaintiff. Presumably it was. The plaintiff at once accepted the provisions of the act, took upon itself the duties imposed, and, in 1835, made a perpetual lease of the land sued for, reserving the right of re-entry if the rent should not be paid as stipulated. While the defendants may not dispute the title of the plaintiff, their landlord, they may show that the plaintiff's right to the land sued for and into the possession of which they entered as the tenants of the plaintiff, has terminated without their fault, so that when this suit was commenced no rent which the plaintiff could lawfully claim remained unpaid ; and that the plaintiff had no right to re-enter for the non-payment of rent as stipulated, or for any other cause, as its right to the use of the land had been taken away by the act of the Legislature. *Orleans County Grammar School* v. *Parker*, 25 Vt. 696. Hence, the real question is whether the act of 1884 was one which, under the existing circumstances, the Legislature could legally pass. The decision of this question depends upon whether the act of 1815 and what had been done by the plaintiff under it, under the Constitution of the United States, was subject to modification or repeal by the Legislature, or to any action on the part of the Legislature except to properly enforce the application of the use of the lands thereby appropriated to the purposes for which they were set apart in the charters of the several towns. In the charter of the town of Richford one-seventieth part or share was set apart " to the use of the county grammar schools throughout this State." No question is made but this is a legislative appropriation of this land to the use named. *Town of Pawlet* v. *Clark*, 9 Cranch, 292. The only contention is whether the appropriation of these lands in the county of Franklin, by the act of 1815, falls within the principle of the Dartmouth College case, and that class of cases which placed it beyond the power of future Legislatures to take it from the plaintiff. If the appropriation had been made a part of the original charter of the plaintiff, it is conceded, on the authority of *Caledonia County Grammar School* v. *Burt*, 11

Vt. 632, that subsequent Legislatures would have no power to take the lands from the plaintiff. It is attempted to distinguish this from that case, mainly because the appropriation was made by an act subsequent to the granting of the charter. In that case the charter was granted upon condition that the inhabitants of Peacham contributed to the establishment of the school, and the appropriation of the lands sequestered in the charters of the towns to the use of county grammar schools was contained in the original charter. No right to alter, modify or repeal the charter was reserved. The condition was complied with by the inhabitants of the town. It was held, following the Dartmouth case, that the lands thus appropriated could not be taken from that school by subsequent legislation, In regard to these lands, in *Grammar School* v. *Burt*, it is held that they did not vest in the original proprietors of the town, individually or collectively, but remained with the Legislature and were at its entire disposal, "except that the charter contained a declaratory covenant or plighted public faith that they should only be appropriated for the uses and purposes mentioned, and to which by the charter they were sequestered and dedicated," citing *Pawlet* v. *Clark*, 9 Cranch, 293. "Over these rights the Legislature had an absolute and entire control and disposal for the uses and purposes for which they were reserved. Of the one for the use of grammar schools, it had the power to grant it to any one or more, and upon such limitations and conditions as the Legislature chose to express, or without any conditions whatever, in which case it would have only the implied condition that the use must ever be applied to the purposes of the grant." In the case at bar the appropriation by the act of 1815 was without reservation, condition or limitation, except that their use should be applied to the purposes for which they had been sequestered and dedicated by the charter. By its terms this was a full and entire grant of the lands. It was not, as contended, the grant of the rents to be derived from them for a limited term of years, or from year to year. The language is that the plaintiff "shall have the said rights or shares of land to themselves and successors in trust for

the use of said Franklin County Grammar School forever." This is as absolute a grant of the lands as is that of the Legislature to the proprietors.

Such grants have always been held, when made without money consideration and without conditions, limitations or reservations for the action of future Legislatures, irrepealable. The foundation of all property rights in real estate depends upon the irrepealability of such grants. This was an executed grant. Nothing further remained to be done by the Legislature to pass these lands, sequestered and dedicated to the use named in the charter of the several towns, to the plaintiff. Nothing remained to be done by the plaintiff except to accept the lands, which it at once did. In this respect this case is distinguishable from *Trustees of Bishop's Fund* v. *Rider*, 13 Conn. 87. In that case the fund sought to be reached remained in the possession and control of the State, and when the act relied upon by the plaintiff was passed, it had not been received by the State, and many things were to be done by the officers of the State to bring it into the possession of the State. It was not, so far as related to the fund claimed, an executed gift or grant, but was wholly executory and rested in the promise of the State contained in the original act to make the gift or grant when the money should be received from the United States. While thus resting in the promise of the State, being wholly without consideration, the promise was unenforceable, and a subsequent Legislature could legally withdraw it. In the case at bar, if without consideration, by the act of 1815, the State did all it could do and all that was necessary to pass these lands to the plaintiff. The plaintiff, by accepting the provisions of the act, made the donation of these lands, if a gift, an executed gift or grant. If an executed gift or grant, the defendant contends it was without consideration, and for that reason subject to recall by future Legislatures. We do not understand that the State stands differently from individuals in regard to executed gifts or grants. As already said, all the grants of lands in townships to the original proprietors are of this kind. We understand that an executed gift is a grant

and a contract, the obligations of which are secured by the pro-vision of the Constitution of the United States, which prohibits the States from passing any law which impairs an obligation of contracts. By a grant arising from an executed gift the donor relinquishes all right to the thing donated, and expressly or impliedly contracts with the donee that he does so and that he will not endeavor to reclaim the thing to himself ; and the donee receives the thing donated as his own, freed from all rights of the donor therein.

In *The Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 656, WASHINGTON, Justice, uses this language : " What is a contract ? It may be defined to be a transaction between two or more persons in which each party comes under an obliga-tion to the other, and each reciprocally acquires a right to what-ever is promised by the other. Powell on Conts. 6. Under this definition, says Powell, it is obvious that any feoffment, gift, grant, agreement, promise, etc., may be included, because in all there is a mutual consent of the minds of the parties concerned in them, upon an agreement between them, respecting some property or right, that is the object of the stipulation." He adds that the ingredients requisite to form a contract are parties, con-sent and an obligation to be created or dissolved. These must all concur, because the regular effect of all contracts is, on one side to acquire and on the other to part with some property or rights ; or to abridge or restrain natural liberty by limiting the parties to do or restraining them from doing something which before they might have done or omitted. If a doubt could exist that a grant is a contract, the point was decided in the case of *Fletcher* v. *Peck*, 6 Cranch, 87, in which it was laid down that a contract is either executory or executed. By the former a party binds himself to do or not to do a particular thing ; the latter is one in which the object of the contract is performed, and this differs in nothing from a grant ; but whether executed or executory, they both contain obligations binding on the par-ties, and both are equally within the provisions of the Constitu-tion of the United States, which forbids the State govern-

ment to pass laws impairing the obligations of contracts." In *Fletcher* v. *Peck*, cited *supra*, it was held that the grant of lands by the Legislature of Georgia—as we understand without consideration—though procured by corruption and fraud, could not be set aside by the act of a subsequent Legislature when the lands had passed into the hands of a *bona fide* purchaser for value, before the passage of the repealing statute. That case is cited as authority in *Grammar School* v. *Burt, supra*. In the Dartmouth College case, p. 683, STORY, Judge, uses this language: " But it must, on the other hand, be admitted that the Constitution did intend to preserve all the obligatory force of contracts which they have by the general principles of law. Now, when a contract has once passed *bona fide* into grant, neither the King nor any private person, who may be the grantor, can recall the grant of the property, although the conveyance may have been purely voluntary. A gift completely executed is irrevocable. The property conveyed by it becomes, as against the donor, the absolute property of the donee, and no subsequent change of intention of the donor can change the rights of the donee. 2 Black. Com. 441; Jenk. Cent. 104. And a gift by the crown of incorporeal hereditaments, such as corporate franchises, when executed, comes completely within the principle and is, in the strictest sense of the terms, a grant. 2 Black. Com. 317, 346 ; Shep. Touch. c. 12. Was it ever imagined that land voluntarily granted to any person by the State was liable to be resumed at its own good pleasure ? Such a pretension would, under any circumstances, be truly alarming; but in a country like ours, where thousands of land titles had their origin in gratuitou grants of the States, it would go far to shake the foundations o the best settled estates."

On p. 698 he further says : " The truth is, the government has no power to revoke a grant, even of its own funds, when given to a private person or a corporation for special uses. It cannot recall its own endowments, granted to any hospital, or college, or city, or town, for the use of such corporations. The only authority remaining to the government is judicial, to ascertain

(31)

the validity of the grant, to enforce its proper uses, to suppress frauds, and if the uses are charitable, to secure their regular administration through the means of equitable tribunals in cases where there would otherwise be a failure of justice."

Speaking for the court in *Terrett* v. *Taylor*, 9 Cranch, 50, the same learned judge says: " If the Legislature possessed the authority to make such a grant and confirmation, it is very clear to our minds that it vested an indefeasible and irrevocable title. We have no knowledge of any authority or principle which could support the doctrine that a legislative grant is revocable in its own nature, and held only *durante bene placito.* Such a doctrine would uproot the foundation of almost all land titles." This court has said in *Grammar School* v. *Burt, supra,* that the State Legislature possessed the authority to grant these lands. The principles, so clearly presented by the highest judicial tribunal, governing the obligations growing out of voluntary grants have never been questioned in the many cases on this subject, subsequently arising in the United States Supreme Court. They were given as unquestioned in that case, when the question was whether the franchises of a charter expressed to have been conferred *ex mero motu* were within the protection of this clause of the United States Constitution. It is true the learned judges found a consideration for granting the franchises conferred in that case. On the principles so clearly enunciated, we think if the grant of the lands made by the act of 1815 was without consideration, it was an executed gift, a grant which could not be recalled by subsequent legislation. It is conceded by the defendants that if the grant of these lands to the plaintiff, by the act of 1815, was on consideration, whether executed or unexecuted, they could not be taken away by subsequent legislation. We think the grant was on consideration. Before the grant the Legislature was charged with the duty of caring for them and appropriating the income arising therefrom to the purposes to which they had been sequestered and dedicated in the charters of the towns. By the grant, if accepted, the Legislature was relieved of this duty. By accepting the grant, by its terms the plaintiff

took upon itself the duty, which it did not have before, of leasing and caring for these lands, collecting and applying the rents to the purpose to which they had been dedicated. This was a sufficient valuable consideration, a relief from a duty on the part of the State, the discharge of which would, of necessity, be more or less expensive to it pecuniarily, and an assumption of this duty and expense by the plaintiff. Besides this consideration, there might well be found the additional consideration which was found by the learned judges in the Dartmouth College case and by our own court in *Grammar School* v. *Burt.* Says MARSHALL, Chief Justice, in the Dartmouth College case, p. 637 : "The objects for which a corporation is created are universally such as the government wishes to promote. They are deemed beneficial to the country; and this constitutes the consideration of the grant." On the same subject, p. 688, says STORY, Judge : "And where the grantees (in the charter) are mere trustees to perform services without reward, exclusively for the benefit of others, for public charity, can it be reasonably argued that the services are less valuable to the government than if performed for private emolument of the trustees themselves ? In respect, then, to the trustees also, there was a valuable consideration for the charter, the consideration of the services agreed to be rendered by them in the execution of a charity, from which they could receive no private remuneration." He further says, p. 690 : "If this had been a new charter, granted to an existing corporation, there could not have been a doubt that the grant would have been an executed contract with the corporation, as much so as if it had been to any private person." The difficulty there to be met was that the corporation, to which the grant was made, was not *in esse* at the time the grant was made. That was overcome by the learned judges. Here the corporation was *in esse* at the time this grant was made, carrying on the work of charity for which it was chartered, the work of a grammar school in which the State was deeply interested. The trustees were then charged with the gratuitous administration, to that public purpose, of the funds they had in hand. By accepting the grant made by the

act of 1815, they increased their cares and responsibilities and undertook, without compensation from the State or otherwise, so far as is shown, the duty of renting and caring for these lands and of applying the avails to the public use to which they had been sequestered and dedicated, a purpose in which the State was deeply interested.

This was ample consideration for the grant, if a consideration be required. The acceptance of the grant was a benefit to the State in that it relieved it of the care of these lands and of the expense of leasing, collecting and appropriating the rents to the purpose to which they had been dedicated, a detriment to the plaintiff, in that these burdens and duties, from which the State was relieved, were to be done by it. Either the burden assumed by the plaintiff or the relief secured to the State was a consideration for the grant. From whatever point we consider it, the act of 1884 falls within the inhibition of the Constitution of the United States, and must be declared inoperative and void. None of the authorities cited by the defendant's counsel are to the contrary.

The judgment of the County Court is reversed and the cause is referred to the clerk to ascertain the rent due the plaintiff, with interest, agreeably to sec. 1259, R. L., and judgment rendered that unless the defendant pays to the clerk for the plaintiff the rent so found due and costs of suit within thirty days from being notified, the plaintiff shall recover the possession of the premises with intervening profits and costs; and if the defendant shall make such payment, then the case to be discontinued under the statute.

ROYCE, Ch. J., and POWERS, J., dissenting.

NOTE.—This case was argued at the January Term, 1889, Franklin County, and was assigned to Ross, J., who then wrote the above opinion which was not concurred in by all the sitting judges. It was re-argued at the General Term, 1889, when the opinion was adopted by a majority of the court.